IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JESUS VILLANUEVA,<br><br>　　　　Petitioner,<br><br>　vs.<br><br>JIM SALMONSEN, WARDEN OF THE MONTANA STATE PRISON, and, AUSTIN KNUDSEN, ATTORNEY GENERAL OF THE STATE OF MONTANA,<br><br>　　　　Respondents. | Cause No. CV 24-132-BLG-DLC<br><br><br>ORDER |

　　　　Currently pending is state pro se petitioner Jesus Villanueva's ("Villanueva"), application under 28 U.S.C. § 2254, seeking habeas corpus relief. (Doc. 11.)

　　　　On February 19, 2025, an order issued directing Villanueva to show cause as to why the matter should not be dismissed as untimely and procedurally defaulted. (Doc. 13.) Villanueva was informed that a failure to make an adequate showing as to either issue or a failure to respond would result in dismissal of the petition. (*Id*. at 4-9.) The order explained in detail the showings Villanueva would be required to make in order for his claims to be considered. After being granted an extension of time, Villanueva filed his response. *See*, (Docs. 18 & 19.)

1

This Court is required to screen all actions brought by prisoners who seek relief. 28 U.S.C. § 1915(a). A habeas petition or portion thereof must be dismissed if the prisoner raises claims that are legally frivolous or fails to state a basis upon which relief may be granted. 28 U.S.C. § 1915A(b)(1),(2). A habeas petition must be dismissed "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." *See*, Rule 4, Rules Governing Section 2254 Cases. For the reasons discussed herein, Villanueva's petition will be dismissed as untimely.

## I.   Factual/Procedural History

Villanueva was charged with committing two counts of felony sexual assault and one count of sexual intercourse without consent on his two minor stepdaughters. *See, Villanueva v. State*, 2024 MT 183N at ¶ 3, (Mont. Aug. 20, 2024). Following a jury trial in Montana's Thirteenth Judicial District, Yellowstone County, Villanueva was convicted of both counts of sexual assault and acquitted of the sexual intercourse without consent charge. *Id*. On September 6, 2019, the district court sentenced Villanueva to 40 years in the Montana State Prison and imposed a 20-year parole restriction. (Doc. 11 at 3.)

Villanueva timely filed a direct appeal. On October 26, 2021, the Montana Supreme Court affirmed the convictions. *See State v. Villanueva*, 2021 MT 277, 406 Mont. 149, 497 P. 3d 586.

Villanueva states that he filed a petition for postconviction relief ("PCR") in the state district court on January 1, 2023. (Doc. 11 at 3, ¶ 9.) The Montana Supreme Court, however, lists the PCR filing date of February 6, 2023. *Villanueva*, 2024 MT 183N at ¶ 4. On June 21, 2023, the district court denied the petition. In an amended judgment, the district court explained that Villanueva had filed his PCR petition 13 days too late. *Id*.

Villanueva appealed the denial. (Doc. 11 at 4, ¶ 10.) On appeal, Villanueva did not dispute that his petition was untimely, instead he argued that the limitations period should be equitably tolled due to hardships he faced as an incarcerated pro se litigant. *Villanueva*, 2024 MT 183N at ¶ 6. In support of his argument, Villanueva pointed to a lack of legal assistance combined with his dyslexia. *Id*. After considering his position, the Court determined Villanueva failed to establish a valid basis to equitably toll the filing timeline. Specifically, the Court noted that despite his claim that he exercised "due diligence," Villanueva waited nearly eight months to seek legal assistance. *Id*. at ¶ 8. Moreover, Villanueva failed to support the claims in his PCR petition with new evidence. *Id*. The Court affirmed the denial of the postconviction petition.

In his present petition, Villanueva asserts: (1) his right to a speedy trial was violated, (Doc. 11 at 4), (2) trial counsel provided ineffective assistance, (*Id*. at 5), (3) *Brady* violations occurred in the underlying criminal proceedings, (*Id*. at 6),

and (4) the trial court exhibited judicial bias. (*Id.*)

## II.   Analysis

As explained herein, Villanueva's federal petition is untimely. Because he has not demonstrated an adequate basis to excuse his late filing, the matter will be dismissed.

**Statute of Limitations**

A threshold issue for the Court is whether these proceedings are time-barred by the applicable statute of limitations. The time-bar issue is to be resolved before considering other procedural issues or the merits of any habeas claim. *See White v. Klitzkie*, 281 F. 3d 920, 921-22 (9th Cir. 2022).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a one-year limitations period applies to petitions filed by state prisoners under 28 U.S.C. § 2254. *See* 28 U.S.C. § 2244. Absent a reason to apply one of the other "trigger" dates in 28 U.S.C. § 2244(d)(1),[1] Villanueva's federal petition had to be filed within one year of the date his conviction became final. 28 U.S.C. § 2244(d)(1)(A). A conviction becomes final upon conclusion of direct

---

[1] The limitations period under 2244(d)(1) is triggered and begins to run from the latest of: (A) the date on which the underlying judgment became final through either the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which any impediment to the filing of a federal petition created by unconstitutional state action is removed; (C) the date on which a newly recognized and retroactively applicable constitutional right was first recognized by the United States Supreme Court; or (D) the date on which the factual predicate underlying a claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D).

review. *Id.*

The Montana Supreme Court dismissed Villanueva's appeal on October 26, 2021. Thus, his conviction became final 90 days later, on January 24, 2022. *See,* §2244(d)(1)(A). The one-year limitations period commenced the following day, January 25, 2022, and expired one year later, absent applicable periods of tolling. *See Patterson v. Stewart*, 251 F. 3d 1243, 1245-47 (9th Cir. 2001)(the limitations period begins to run on the day after the triggering event pursuant to Fed. R. Civ. P. 6(a)). Accordingly, Villanueva should have filed in this Court by Wednesday, January 25, 2023. As explained in prior orders, Villanueva made his initial filing in this Court on September 13, 2024, over a year and a half too late.

Central to the analysis of the timeliness of Villanueva's federal habeas petition, is the filing of his state PCR petition. On February 6, 2023, Villanueva's PCR petition was filed. The state district court denied the petition on June 21, 2023 as untimely. Federal time is tolled while a state prisoner has a "properly filed application for State postconviction or other collateral review" pending in state court. 28 U.S.C. § 2244(d)(2). An untimely application for collateral relief is not "properly filed." *Pace v. DiGuglielmo*, 544 U.S. 408, 471 (2005). Because Villanueva did not file his PCR petition until after his federal limitations period had already expired, it was previously determined that it did not appear Villanueva was entitled to statutory tolling under § 2244(d)(2). Accordingly, he was provided

an opportunity to show cause as to why his petition should not be dismissed as time barred.

Villanueva's first response to the show cause order was non-responsive and instead set out his own account of the factual background underlying the state criminal matter. (Doc. 18.) The filing was accompanied by 58 pages of documents, consisting primarily of interview transcripts from 2017 to 2018. (Doc. 18-1.)

In his second response to the show cause order, Villanueva first suggests that his state PCR petition was not untimely and that the state courts should have applied the "prison mailbox rule" of *Houston v. Lack*, 487 U.S. 266 (1988), to support such a finding. (Doc. 19 at 1-6.) Villanueva next contends that the actual innocence exception should apply and provide a gateway to excuse his untimely filing. (*Id.* at 6-12.)

    i.    **Application of Prison Mailbox Rule**

In support of his argument that the state district court should have found his PCR petition to be timely and "properly filed," he notes that he signed the document on January 1, 2023, and delivered it to prison authorities on the same day. (Doc. 19 at 2-2.) Accordingly, Villanueva contends that January 1, 2023, should be deemed the appropriate filing date. (*Id.*) Notably, the state district court did not receive the document until February 6, 2023, thirteen days after the filing

deadline and more than a month after Villanueva purportedly delivered the petition to prison authorities. *Villanueva*, 2024 MT 183N at ¶ 4. Moreover, on appeal, the Montana Supreme Court found that Villanueva failed to show he had exercised due diligence and that he did not support the claims in his PCR petition with newly discovered evidence. *Id*. at ¶ 8.

Villanueva contends that the State of Montana "adopted" the federal Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when it revised its postconviction statutes in 1997, and goes on to imply that the "prison mailbox rule" would then automatically apply to state proceedings. (Doc. 19 at 4-5.) If the mail box rule does apply, as Villanueva asserts, his state PCR petition would be deemed filed on the date he delivered the document to prison officials for mailing. *See Saffold v. Newland*, 250 F. 3d 1262, 1268 (2000), *vacated on other grounds*, 536 U.S. 214 (2002). This, in turn, would trigger the statutory tolling provisions of 28 U.S.C. §2244(d)(2). Unfortunately, for Villanueva he is mistaken.

While it is true that the 1997 Montana Legislature revised the Montana Post-Conviction Hearing Act ("MPCHA") to include "new, more restrictive AEDPA-modeled" procedural bars including: a 1-year time bar, an express exhaustion of state remedies requirement, preclusion from second or successive petitions for ineffective assistance of counsel claims, and elimination of an express requirement for reviewing court findings of fact and conclusions of law, *Henderson v. State*,

7

558 P.3d 749, 775 (Mont. 2024)(citing §§ 46-21-101(2), -102(1), -105, and -201, MCA (1997 Mont. Laws ch. 378, §§ 3-6)), the prison mailbox rule was not adopted. Montana's state courts do not, and are not obligated to, apply the prison mailbox rule. *See, Orpiada v. McDaniel*, 750 F. 3d 1086, 1089-90 (9th Cir. 2014); *Bullock v. State*, 2020 MT 57N ¶ 7 (citing the rule of *Houston v. Lack*, 487 U.S. 266 (1988), and noting, "We have never applied this rule, known as the prison mailbox rule, to documents filed in state court."); *see also, Hernandez v. Bludworth*, No. CV 22-51-M-DWM, 2023 WL 356341, at *2, n.2 (D. Mont. Jan. 23, 2023)(finding state court not required to apply mail box rule).

Accordingly, while Villanueva provides the date he filed his PCR petition and implies that is the same date he deposited it in the prison mail system, this date does not make a difference in the present analysis. The document was not "properly filed" for purposes of AEDPA, thus, his federal filing remains untimely.

### ii. Actual Innocence

Villanueva next contends that the actual innocence gateway should apply to excuse his untimely filing, as no juror acting reasonably would have found him guilty of the sexual assault charges, after finding him not guilty of sexual intercourse without consent. (Doc. 19 at 6.)

In *McQuiggin v. Perkins*, 569 U.S. 383, 391-396 (2013), the Supreme Court held that the "actual innocence gateway" to federal habeas review that applies to

procedural bars in *Schlup v. Delo*, 513 U.S. 298, 327 (1995), and *House v. Bell*, 547 U.S. 518 (2006), extends to petitions that are time-barred under AEDPA. *See Schlup*, 513 U.S. at 329 (petitioner must make a credible showing of "actual innocence" by "persuad[ing] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.").

A petitioner claiming actual innocence must satisfy the *Schlup* standard by demonstrating "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Lee v. Lampert*, 653 F. 3d 929, 938 (9th Cir. 2011)(en banc). In the federal habeas context "actual innocence" means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). To make a credible claim of actual innocence, petitioner must produce "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. The habeas court then considers all the evidence: old and new, incriminating and exculpatory, admissible at trial or not. *House*, 547 U.S. at 538. On this complete record, the court makes a "probabilistic determination about what reasonable, properly instructed jurors would do." *Id*. (quoting *Schlup*, 513 U.S. at 330).

The miscarriage of justice exception "is limited to those *extraordinary* cases where the petitioner asserts his [actual] innocence and establishes that the court cannot have confidence in the contrary finding of guilt." *Johnson v. Knowles*, 541 F. 3d 933, 937 (9th Cir. 2008)(emphasis in original). "[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims [ …] on the merits notwithstanding the existence of a procedural bar to relief." *McQuiggin,* 569 U.S. at 392. "This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Id.* (quotations omitted). The Supreme Court has explicitly stated that the miscarriage of justice exception "applies to a severely confined category" cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *McQuiggin*, 569 U.S. at 395 (quotations and citations omitted).

In support of his claim of actual innocence, Villanueva refers to interviews of a social worker with the Department of Family Services, Heidi Kimmet, who was involved in the investigation of Villanueva, his ex-partner, Autumn, and his stepdaughters, in conjunction with child removal proceedings. (Doc. 19 at 6-8.) Villanueva asserts that the jury never heard about these interviews, as they were not introduced into evidence, and that the trial court limited questioning from

10

defense counsel regarding the Kimmet interviews. (*Id*. at 9.) Villanueva elected not to take the stand during trial, accordingly, he believes the failure to introduce the interviews or testimony surrounding them, violated his right to a fair trial, as this evidence would have supported his actual innocence. (*Id*. at 9-10.)

A gateway innocence claim is foreclosed, however, if the petitioner fails to produce any new evidence. *Schlup,* 513 U.S. at 324. Villanueva has not presented new evidence or information that would establish that he is actually innocent of the offenses of sexual assault, aside from his own conclusory assertions of innocence. The interviews of Kimmet were known to Villanueva and his defense team prior to trial. Thus, they do not constitute "new" evidence for purposes of *Schlup*.

To the extent that Villanueva suggests he could have provided his own testimony, that at most would have resulted in a credibility dispute. A reasonable juror could still believe his ex-partner's testimony or one of the victim's accounts over Villanueva's testimony. "[I]f a habeas petitioner's own testimony disputing that he committed the crime were enough to satisfy the actual innocence gateway's "exacting" standard, that gateway would be open in nearly every case, not "only in the 'extraordinary' case." *Lee*, 653 F. 3d at 938.

Villanueva's assertions and conjecture at this juncture, do not constitute conclusive evidence of innocence, nor has he shown that no reasonable juror could have convicted him in light of this "new" evidence. *See McQuiggin*, 569 U.S. at

11

399. Villanueva cannot pass through the actual innocence gateway. Because Villanueva has failed to meet his burden, he is not entitled to an equitable exception to the statute of limitations. The petition remains untimely. Accordingly, this matter will be dismissed with prejudice.

### III.    Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, 656 U.S. 134, 140-41 (2012) (quoting *Slack*, 529 U.S. at 484).

Villanueva has not made a substantial showing that he was deprived of a constitutional right. He has failed to make a colorable claim of statutory or equitable tolling. Accordingly, his is petition time barred. Reasonable jurists

would find no basis to encourage further proceedings. A certificate of appealability will be denied.

Based on the foregoing, the Court enters the following:

## ORDER

1. The Petition (Doc. 11) is DISMISSED with prejudice.

2. The Clerk of Court is directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability is DENIED.

DATED this 27th day of August, 2025.

*/s/ Dana L. Christensen*
Dana L. Christensen
United States District Court Judge